**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | | |
|---|---|---|
| UNITES STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 CR 932-1 |
| | ) | |
| NASSIM TAHZIB, | ) | |
| | ) | |
| Defendant. | ) | |


**<u>MEMORANDUM OPINION</u>**

The defendant Nassim Tahzib pled guilty to wire fraud and income tax evasion and was sentenced to a period of 30 months, the low end of the applicable 30-37 month guideline range. He appealed on the basis that he should have received a lower guidelines sentence, based largely upon his contention that his offenses were mitigated by the fact that they were caused by his gambling addiction. We had rejected this argument both because we were not persuaded he had a gambling addiction and because even if he did, it would do nothing to explain his income tax evasion, a separate basis for his concurrent 30-month sentences. The Court of Appeals affirmed, <u>United States v. Tahzib</u>, 513 F.3d 692 (7th Cir. 2008).

Tahzib has now filed a motion under 18 U.S.C. § 2255, seeking to set aside his conviction and sentence. We have denied the motion, and the purpose of this opinion is to explain why we denied it.

The defendant has discovered that the conviction is likely to result in his deportation upon his release from prison. (He is a citizen of the United Kingdom.) His hope is that if his conviction were to be set aside, he would be acquitted in a new trial and thereby avoid deportation.

## The Geneva Convention

Tahzib's motion is based on two general grounds. First, he claims the government violated Article 36 of the Vienna Convention by failing to notify him of his right to have the assistance of the British consulate prior to the time he changed his plea. The government responds that the right to consular assistance applies only when the individual is detained and that Tahzib had not been detained prior to the time his plea of guilty was entered. The government cites the case of <u>Osagiede v. United States</u>, 543 F.3d 399, 402 (7th Cir. 2008). In that case, the court explained the obligations imposed by Article 36:

> Article 36 imposes three separate obligations on a detaining authority: (1) inform the consulate of a foreign national's arrest or detention without delay; (2) forward communications from a detained national to the consulate without delay, and (3) inform a detained foreign national of "his rights" under Article 36 without delay. Vienna Convention, art. 36(1)(b), 21 U.S.T. 77, 596 U.N.T.S. 261.

<u>Id.</u> at 402. The defendant argues that he was in fact detained for several hours when he was fingerprinted, photographed and processed after his guilty plea was entered, but this is not the detention

contemplated by Article 36.  Moreover, whatever need there could have been for consular assistance prior to Tahzib's entry of his plea of guilty no longer existed after his plea had been entered. He was not detained before the plea, and even if the brief post-plea processing could be regarded as detention, it was irrelevant for Article 36 purposes.

In <u>Osagiede</u>, the Court explained the utility of Article 36 in cases where foreign nationals are being detained:

> Article 36 furthers an essential consular function: "protecting ... the interests of the sending State and of its nationals." Vienna Convention, arts. 5(a), (e), 21 U.S.T. at 82-83. This "protective function" is one of the most important functions performed by a consulate. Foreign nationals who are detained within the United States find themselves in a very vulnerable position. Separated from their families and far from their homelands, they suddenly find themselves swept into a foreign legal system. Language barriers, cultural barriers, lack of resources, isolation and unfamiliarity with local law create "an aura of chaos" around the foreign detainees, which can lead them to make serious legal missteps.

<u>Id.</u> at 402-03.

Tahzib's reliance on Article 36 is especially inappropriate when one considers the difference between his situation and that of many foreign nationals residing in this country.  He was born in 1955 in Iran, and his parents emigrated with him to Scotland when he was a baby.  He was reared in Scotland.  (Presentence Investigation Report at 12.)  He entered the United States in 1980 on a British visa and remained here illegally after the visa

expired.  He lived in California until he moved to Chicago in 1992, where he remained until he returned to California in 2001.  <u>Id.</u>  He has three children, all born in the United States.  Whether he speaks any language but English does not appear from the record. In 1991, the defendant had an experience with the American criminal justice system.  He was convicted in Los Angeles, California, of grand theft and sentenced to a term of 180 days.  Like the present wire fraud conviction, the offense involved the theft of money from defendant's employer, a car dealer.  (Presentence Investigation Report at 10; Ex. A to Government's Sentencing Mem.)

Our conclusion is that Article 36 of the Vienna Convention does not apply to the defendant and affords him no basis for setting aside his conviction or sentence.

### Sixth Amendment Claims

Tahzib's second category of grounds for relief is a series of Sixth Amendment complaints about the representation afforded by his trial attorney, Kent Carlson.  Foremost among these is his assertion that, regarding possible immigration consequences of a guilty plea, Mr. Carlson advised him that "there is very little chance it would ever become a problem."  (Aff. of Nassim Tahzib, Ex. 7 to Defendant's Reply, ¶ VII at A-19.)  Mr. Carlson, on the other hand, states as follows:

> I advised Mr. Tahzib that I was not an immigration
> attorney and that he should consult with an immigration
> attorney before making any decisions; That in my opinion

that he would definitely be deportable after a plea of guilty; That based on information he provided me, he may have a claim for asylum due to religious persecution in Iran, but that he needed to consult with an immigration attorney about that; That other than that about the best he could hope for was to fall thru the cracks.

(Aff. of Kent R. Carlson, Ex. A to Government's Resp.)

In order to obtain relief for a Sixth Amendment violation, a convicted defendant must prove not only that counsel's performance fell below an objective standard of reasonableness, but also that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984).

The right to the effective assistance of counsel applies to the plea process as much as it does to a trial. Hill v. Lockhart, 474 U.S. 52, 57 (1985). But to meet the prejudice requirement of Strickland, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. He must make a substantial showing "that he would not have pleaded guilty if he were advised differently." Key v. United States, 806 F.2d 133, 139 (7th Cir. 1986); see also Santos v. Kolb, 880 F.2d 941, 943 (1989) ("A specific explanation of why the defendant alleges he would have gone to trial is required.") (citing Key, 806 F.2d at 138-39).

In this case, the defendant has made no attempt to show any plausible reason to believe that, had he been given different advice concerning the possibility of deportation, he would have gone to trial. This is understandable, because there was no realistic possibility that the defendant could have been acquitted in a trial. His guilt was never contested and, throughout the plea process, there was never any suggestion of a defense (as opposed to mitigation on the basis of his alleged gambling addiction). We find, therefore, that the defendant has failed to demonstrate that, in the absence of the alleged professional errors of his counsel, he would have gone to trial instead of pleading guilty.

There is a more fundamental problem with the defendant's complaint about Mr. Carlson's immigration advice. As the government points out in its response to the defendant's motion, the Sixth Amendment assures the effective assistance of counsel in the criminal prosecution, but it does not extend to collateral aspects of the prosecution. In <u>Santos</u>, the Court held that deportation is a collateral consequence to which the Sixth Amendment does not apply:

> The failure of petitioner's counsel to inform him of the immigration consequences of his guilty plea, however unfortunate it might be, simply does not deprive petitioner of the effective assistance of counsel guaranteed by the constitution.

880 F.2d at 945. In <u>Santos</u>, the attorney failed to mention the possibility of immigration consequences at all. Here, the

defendant alleges that he and Mr. Carlson discussed immigration consequences and Mr. Carlson told him that "there is very little chance it would ever become a problem."  We do not see that this difference distinguishes the case from <u>Santos</u>.  Whether immigration consequences were not mentioned at all, or mentioned in terms that turned out to be overly optimistic, immigration is still a collateral matter to which the Sixth Amendment does not apply.  We hold as a matter of law, therefore, that the defendant is not entitled to relief on the basis of what he claims Mr. Carlson told him about immigration consequences.

*     *     *     *

Finally, the defendant has a number of complaints about things Mr. Carlson did not do in connection with the sentencing.  One complaint is that the court was not given a psychological evaluation of the defendant.  We disagree; considerable psychological information was presented, all of which we gave appropriate consideration.  The additional matters suggested by defendant would not have changed the result.  The same is true of the defendant's remaining complaints.  He was sentenced at the very low end of the applicable guidelines.  Mr. Carlson afforded the defendant diligent and competent representation at sentencing, and there is no basis for defendant's contention that Mr. Carlson's performance fell below the constitutional standard.

For these reasons, the defendant's motion to vacate, set aside
or correct his sentence is being denied.


      DATE:          June 29, 2009


      ENTER:      _____

                 John F. Grady, United States District Judge